UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RONALD BURCH                                    CIVIL ACTION

VERSUS                                          NO. 24-1165

HOLCIM US, INC.                                 SECTION M (4)

**<u>ORDER & REASONS</u>**

Before the Court is a motion for summary judgment filed by defendant Holcim (US), Inc.

("Holcim").[1]  Plaintiff Ronald Burch responds in opposition,[2] and Holcim replies in further support

of its motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the

Court denies the motion.

## I.    BACKGROUND

This case involves an employment dispute.  Burch was employed for seven months as an

area manager by Holcim, a manufacturer and seller of cement mix.[4]  In his capacity as area

manager, Burch oversaw four concrete plants in the New Orleans area, including a plant in

Metairie which contains "settlement pits" used for recycling and treating "process water."[5]  In

November of 2023, Holcim began transporting process water from another Holcim plant to the

Metairie plant.[6]  On Saturday, November 18, after Burch was alerted that a contractor was dumping

"waste fluid generated at the Port Sulphur plant" into the pits at the Metairie plant,[7] he called

---

[1] R. Doc. 19.
[2] R. Doc. 23.
[3] R. Doc. 24.
[4] R. Docs. 19-1 at 8; 23 at 3.
[5] R. Docs. 19-1 at 9; 23 at 3.
[6] R. Doc. 19-1 at 14.
[7] R. Doc. 23-3 at 194.

Holcim's environmental manager, Robert Boudreaux, to report it.[8]   The parties dispute what Boudreaux told Burch during this call.[9]   Two days later, on November 20, Burch observed another truck dumping water from the other plant into the Metairie plant pits and notified general manager Greg Sessa, who told Burch to permit the truck to proceed.[10]

On November 20 and 21, Burch made three entries (called "VPC reports") in Holcim's incident reporting system.   All three reports were categorized as "critical" and related to "water pollution discharge."[11]   In the first report, made on November 20, Burch noted that he "found [a contractor] dumping soapy water into [the] pits," which "created a foaming problem."[12]   Burch indicated that action was needed to stop the discharge, assigned the action to himself, and marked the action complete on November 21.[13]   This report indicated that the plant was "compliant" under the entry for "compliance result."[14]   The second report, also made on November 20, stated that the "[w]aste water being dumped in [the] pits" had increased the pH of the water in the "outfall."[15]   On November 21, Burch noted that he took action to counter the change in pH and marked the action complete.[16]   This report also indicated that the plant was "compliant."[17]   The third report, created on November 21, stated that the "[e]xtra waste water being put in [the] Metairie pit system is causing flooding in [the] parking lot and [ready-mix] truck route."[18]   This report did not include any action assignment and indicated that the plant was only "partially compliant."[19]

---

[8] R. Docs. 19-1 at 14; 23 at 4.
[9] *See* R. Docs. 19-1 at 14 ("Boudrea[u]x told [Burch] this was an acceptable practice."); 23 at 4 ("Boudreaux said, 'They can't do that' and that he would follow up.").
[10] R. Docs. 19-1 at 14; 23 at 4.
[11] R. Docs. 19-1 at 15; 19-24; 23 at 4-5.
[12] R. Doc. 19-24 at 2.
[13] *Id.* at 3-4.
[14] *Id.* at 4.
[15] *Id.* at 7.
[16] *Id.* at 8-9.
[17] *Id.* at 9.
[18] *Id.* at 11.
[19] *Id.* at 12.

On November 30, Traci McManus, Holcim's human resources manager for Burch's area, emailed Katina Ney, Holcim's human resources manager, seeking approval to terminate Burch. McManus told Ney: "There have been a number of performance issues with [Burch] that have been addressed in meetings with [him] and his manager Steve Baird.  He has been verbally coached through all issues as they came up but has shown no improvement."[20]  In response, Ney asked whether "the performance issues [were] documented on either a note to file, coaching form or email."[21]  McManus answered that she "confirmed with [Sessa that] morning that [Baird] has all meetings documented as reference notes," and Ney approved the termination.[22]  That evening, Sessa sent McManus a series of emails explaining and providing examples of the type of concerns that Sessa said "continue[d] to surface with [Burch] and/or the operations he [was] overseeing."[23]  The next morning, Burch attended an area managers meeting, at which he says he again expressed concern about the dumping.[24]  Later that same day, Sessa informed Burch that he was being terminated for performance issues.[25]  That evening, after Burch had been terminated, Sessa sent McManus another email stating that, at the area managers meeting that morning, Burch had "showed such disrespect and such an unwillingness to address the concern" that Baird had to "intervene."[26]

Burch brought this action in state court on March 21, 2024, alleging that Holcim terminated him "because of his good faith disclosure of [Holcim's] environmental violations," in violation of

---

[20] R. Doc. 19-26 at 3.
[21] *Id.* at 2.
[22] *Id.*
[23] R. Docs. 19-13 at 1-3 (quote at 3); 19-14; 19-18.
[24] R. Doc. 23 at 5.
[25] R. Doc. 19-1 at 16.
[26] R. Doc. 19-19.

the Louisiana Environmental Whistleblower Act (LEWA).[27]  Holcim removed the case to this

Court on May 7, 2024.[28]  Holcim now moves for summary judgment.

## II.    PENDING MOTION

In support of its motion for summary judgment, Holcim argues that Burch cannot support

his claims under the LEWA.  First, Holcim contends that Burch did not have a reasonable, good

faith belief that the dumping he observed and reported violated an environmental law because he

"fails to identify any specific law violated by the alleged practices," admits, via the VPC reports,

that he believed the dumping was "compliant and partially compliant," and has "indicated that he

did not report it as illegal until after termination of his employment."[29]  Holcim then argues that

Burch cannot establish a *prima facie* case for retaliation under the *McDonnell Douglas* burden-

shifting framework, specifically, says Holcim, because Burch has "failed to produce a shred of

evidence connecting the termination of his employment to his alleged protected activity," aside

from temporal proximity.[30]  Holcim asserts that it had a legitimate, nonretaliatory reason for

terminating Burch, namely "performance issues," which Burch cannot dispute.[31]  Finally, Holcim

asserts that Burch's representation on his employment application that he left his prior employment

(at his own business which he closed in the fall of 2022) for a "better opportunity," although he

"was not even aware of the opening for an Area Manager at Holcim at the time he closed his

company," constitutes after-acquired evidence that would limit any back-pay award, because

Holcim would have terminated Burch had it known of this "misstatement" on his employment

application.[32]

---

[27] R. Doc. 1-2 at 2.
[28] R. Doc. 1.
[29] R. Doc. 19-1 at 21-22.
[30] *Id.* at 22.
[31] *Id.* at 23-24 (quote at 23).
[32] *Id.* at 24-25 (quote at 24).

4

In his opposition, Burch first argues that the LEWA does not require plaintiffs to identify a particular law they believe to have been violated.[33]  Burch then contends that his reporting the dumping to Boudreaux, who Burch says told him the practice was illegal, prior to entering the VPC reports demonstrates that he had a good faith belief that the dumping violated an environmental law.[34]  Burch next argues that "the timing of the discharge in relation to the previously undocumented alleged performance problems, inconsistent statements by [Holcim] regarding [the] existence of documentation of the alleged problems, and [Holcim]'s failure to discipline similarly situated employees are all strong evidence of [a] causal connection" between his reporting the dumping and his termination.[35]  Next, Burch contends that, while not sufficient on its own, the temporal proximity in this case is "important evidence of pretext."[36]  In addition, Burch says that the conflicting testimony as to whether Burch's supervisors ever communicated dissatisfaction with his performance prior to his termination, the fact that much of Holcim's evidence of poor performance "was not made until right after Mr. Burch began his protected conduct,"[37] and "[t]he lack of contemporaneous documentation[, which] is even further highlighted by [Holcim]'s inconsistent statements about whether such contemporaneous documentation exists," are also evidence of pretext.[38]  And, "on top of all this," Burch argues that "Holcim's 'preference for subjective bases for termination selection suggests ulterior purposes.'"[39]  Lastly, Burch asserts that there is "substantial doubt" regarding Holcim's after-acquired evidence argument, "because the answer 'better opportunity' is not false" and "Holcim provides no evidence

---

[33] R. Doc. 23 at 6.

[34] *Id.* at 7.

[35] *Id.* at 8.

[36] *Id.* at 11.

[37] *Id.* at 11-14 (quote at 13-14).  Burch also contests the admissibility and veracity of the evidence of his purported performance issues predating the decision to terminate him.  *See id.* at 12-13.

[38] *Id.* at 14.

[39] *Id.* at 14 (quoting *Rowe v. Cleveland Pneumatic Co.*, 690 F.2d 88, 93 (6th Cir. 1982)).

or any policy or practice that would have led to termination" based on this purported misrepresentation.[40]

In its reply, Holcim argues that Burch's "vague, speculative assertion that [Holcim]'s practice violated some hypothetical law" did not constitute a reasonable belief under the LEWA.[41] Holcim then repeats its assertion that Burch lacked a good faith belief that Holcim violated the law because Burch "reported the practice of transporting water was in fact legal" in the VPC reports and "never claimed the 'waste water' incident was illegal while he worked at Holcim."[42] Holcim again contends that "Plaintiff's failure to identify evidence other than temporal proximity to establish a causal connection is a fatal flaw to his LEWA claim."[43] Holcim then argues that it met its burden of production to show a nonretaliatory reason for Burch's termination under *McDonnell Douglas*,[44] which reason Burch has not rebutted as being pretextual because his "disagree[ment] with [Holcim]'s assessment of his performance is irrelevant," Burch admitted his responsibility for a customer service complaint, and the record shows that Holcim had a "good faith belief that [Burch] was not meeting its performance expectations after seven months of employment."[45] Finally, Holcim contends that it "clearly satisfied [its] burden" with respect to its after-acquired evidence argument by producing the affidavits of Robert Doubleday and Katina Ney, who state that they would not have hired Burch or would have terminated him had they known that he had lied on his employment application.[46]

---

[40] *Id.* at 15.
[41] R. Doc. 24 at 5.
[42] *Id.* at 5-6.
[43] *Id.* at 6.
[44] *Id.* at 6-8.
[45] *Id.* at 8.
[46] *Id.* at 8-10 (quote at 10) (discussing R. Docs. 19-29; 19-30).

## III.    LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment

motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Analysis

#### 1. Louisiana Environmental Whistleblower Act

The LEWA forbids an employer from:

act[ing] in a retaliatory manner against an employee, acting in good faith, who …
[d]iscloses, or threatens to disclose, to a supervisor or to a public body an activity,

8

policy, practice of the employer, or another employer with whom there is a business relationship, that the employee reasonably believes is in violation of an environmental law, rule, or regulation.

La. R.S. 30:2027(A)(1).  Where, as here, there is no direct evidence of retaliation, courts apply the three-part *McDonnell Douglas* burden-shifting framework to claims under the LEWA.  *Menard v. Targa Res. LLC*, 2020 WL 3271992, at *2 (M.D. La. June 17, 2020), *aff'd*, 2023 WL 4763326 (5th Cir. July 26, 2023).  Under the *McDonnell Douglas* framework, the plaintiff-employee has the initial burden of establishing a *prima facie* case of retaliation by showing (1) that he engaged in an activity protected by the LEWA, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action.  *Id.* "If a plaintiff makes out a prima facie case, the burden of production shifts to the defendant to 'articulate a legitimate, non-discriminatory reason for its decision to terminate him.'"  *Id.* (quoting *Breaux v. Rosemont Realty*, 768 F. App'x 275, 278 (5th Cir. 2019)).  If the defendant meets its burden of production, the burden of persuasion shifts back to the plaintiff to show that the defendant's stated reason was pretextual.  *Id.*  The plaintiff's ultimate burden is to show that his protected action was the but-for cause of the adverse employment action.  *Id.*

## 2. *Prima facie* **case**

Here, Burch has met his burden of establishing a *prima facie* case of retaliation.  First, Burch has presented sufficient evidence to show that he engaged in a protected activity under the LEWA.  Burch asserts that he verbally reported and objected to the dumping when he called Sessa on November 20 and again at the area managers meeting on December 1.[47]  Burch also entered three "critical" "water pollution discharge" VPC reports related to the dumping.[48]  These are disclosures within the meaning of the LEWA.  *See, e.g., Menard v. Targa Res., L.L.C.*, 366 So. 3d

---

[47] R. Doc. 23 at 4-5.
[48] *See* R. Doc. 19-24.

1238, 1242-43 (La. 2023) ("First, the purpose of LEW[A] is to further the constitutional mandate to protect the environment by protecting employees who act on their honest belief that an environmental law has been violated. And second, *a 'broad interpretation' of Section 2027 is required to effectuate the constitutional and statutory directive and purpose*. Merriam-Webster defines 'discloses' as 'to make known or public.' That definition is *expansive* enough to include a refusal to participate." (internal citation omitted; emphasis added)).

To be a protected activity, the disclosure must have been made with a reasonable, good faith belief that the practice violated an environmental law, rule, or regulation. La. R.S. 30:2027(A)(1). This encompasses "both a subjective requirement – 'good faith' – and an objective requirement – 'reasonable belief.'" *Borcik v. Crosby Tugs, L.L.C.*, 222 So. 3d 672, 675 (La. 2017). The Louisiana supreme court has explained that, like the term "discloses," *see Menard*, 366 So. 3d at 1242-43, "a broad definition of 'good faith' is necessary to uphold the purpose of the [Louisiana Environmental Quality Act]" and clarified "that the term 'good faith,' as used in R.S. 30:2027, means an employee is acting with an honest belief that a violation of an environmental law, rule, or regulation occurred." *Borcik*, 222 So. 3d at 677. Considering the Louisiana supreme court's broad reading of the term "good faith," this Court finds that there is at least a disputed issue of material fact as to whether Burch reported the dumping of the transported process water with a good faith belief that it was illegal. Holcim contends that Burch lacked a good faith belief that Holcim was engaged in an environmental violation because he "admits" in the VPC reports that the practice was "compliant and partially compliant."[49] In his deposition, Burch denied ever describing the practice as "compliant" in the VPC reports.[50] But, to the extent that these entries call Burch's deposition testimony into some doubt, the final VPC report does indicate that Burch

---

[49] R. Doc. 19-1 at 21.
[50] R. Doc. 23-3 at 205.

believed the practice was at least "partially" not compliant.[51]   Moreover, Burch asserts that he complained of the practice "several times" after submitting the VPC reports, including at the December 1 meeting.[52]   Holcim also contends that Burch "did not report [the dumping] as illegal until after termination of his employment."[53]   However, the LEWA only requires an employee to "disclose" a practice he believes to violate an environmental law, rule, or regulation.  La. R.S. 30:2027(A)(1).   Burch reported and opposed the dumping while employed at Holcim and has asserted that he understood the practice to be illegal for as long as he has worked in Louisiana,[54] and that Boudreaux told him that the practice was illegal when he first inquired about it.[55]  Finally, while Holcim argues that Burch "reported to the Louisiana Department of Environmental Quality that [Holcim]'s water processes were compliant,"[56] these reports pertain to the results of water samples, not the practice of transporting and dumping the process water.[57]

As to the reasonableness requirement, Holcim argues that Burch "could not identify what law Holcim was violating other than vaguely saying 'the law of Louisiana,'"[58] nor "any basis to support his conclusion that [Holcim]'s activity was illegal."[59]   Courts have consistently rejected the notion that the LEWA requires an employee to identify a particular law he believes the employer's practice violates.  *See, e.g., Collins v. State ex rel. Dep't of Nat. Res.*, 118 So. 3d 43, 49 (La. App. 2013) ("To require a plaintiff to know specifically what law is being violated would seem to render the 'good faith' and 'reasonably believe' portions of the law superfluous."); *Arceneaux v. Genesis Energy, LLC*, 2016 WL 6680360, at *4 (E.D. La. Nov. 10, 2016); *Roberts*

---

[51] R. Doc. 19-24 at 12.
[52] R. Doc. 23 at 5.
[53] R. Doc. 19-1 at 21-22.
[54] R. Doc. 23-3 at 224.
[55] R. Doc. 23 at 7.
[56] R. Doc. 19-1 at 22 (citing R. Doc. 19-25).
[57] *See* R. Doc. 19-25.
[58] R. Doc. 19-1 at 14-15.
[59] *Id.* at 21.

*v. Fla. Gas Transmission Co.*, 447 F. App'x 599, 602 (5th Cir. 2011). And, when asked how he reached the conclusion that the dumping he observed was illegal, Burch explained that he believes it is against Louisiana law to "transport waste fluid generated at a facility to another facility without a waste manifest, a permit, SDS Sheet, and placards on the truck."[60] Burch's identification of these specific requirements demonstrates that his belief that Holcim violated Louisiana law was based on more than "some hypothetical consequence on the environment." *Roberts*, 447 F. App'x at 602. Burch also asserts that Boudreaux informed him that the practice was illegal,[61] which Sessa conceded would have provided a reasonable basis for Burch's suspecting that the practice violated an environmental law.[62] Accordingly, there is sufficient summary-judgment evidence at this summary-judgment stage that Burch's belief that the dumping violated Louisiana law was objectively reasonable.

Because it is undisputed that Burch experienced an adverse employment action when he was terminated on December 1, 2023, the Court now looks to whether Burch established a causal connection between the alleged protected activity and the adverse employment action. The close temporal proximity – 12 days – between Burch's first reporting the dumping (November 18, 2023) and the start of the termination process (November 30, 2023) is sufficient, on its own, to establish a causal connection for purposes of establishing a *prima facie* case.[63] *See, e.g., Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) ("'At the prima facie case stage, a plaintiff

---

[60] R. Doc. 23-3 at 194, 223 (quote at 223).

[61] *See* R. Doc. 23 at 7.

[62] R. Doc. 23-2 at 205.

[63] Holcim, citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802 (5th Cir. 2007), asserts that "the 5th Circuit has held [that] temporal proximity alone is insufficient to prove a causal connection." This is inaccurate. In *Strong*, the Fifth Circuit "affirmatively reject[ed] the notion that temporal proximity standing alone can be sufficient proof of *but for causation*." *Id.* at 808 (emphasis added). However, close temporal proximity can, on its own, be sufficient evidence of a causal connection for purposes of establishing a *prima facie* case. *See Vargas v. McHugh*, 630 F. App'x 213, 216 (5th Cir. 2015) ("Temporal proximity between the protected activity and the adverse action can prove the causation element 'when the protected act and the adverse employment action are very close in time.'" (quoting *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007)).

can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action.'  However, 'the protected act and the adverse employment action must be very close in time to establish causation by timing alone.'  We have held that a period of two-and-a-half months, a period of two months, and a period of six-and-a-half weeks, are close enough to show a causal connection." (alterations and internal citations omitted) (first quoting *Garcia v. Pro. Cont. Servs. Inc.*, 938 F.3d 236, 243 (5th Cir. 2019), then quoting *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015)).

### 3.  Legitimate, nonretaliatory reason for adverse employment action

Because the court finds that Burch has established a *prima facie* case of retaliation, the burden of production shifts to Holcim to provide a legitimate, nonretaliatory reason for Burch's termination.  *Menard*, 2020 WL 3271992, at *2.  Holcim asserts that Burch was terminated for performance issues, including "failure to ensure the efficient and effective loading and delivery of product to meet customer expectations, failure to follow managerial instructions, failure to manage plants safely, refusal to work as part of a team, and failure to properly manage his subordinates."[64] Holcim has met its burden by producing evidence of specific examples of poor performance.[65] *See, e.g., Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015) ("We have repeatedly held that a charge of 'poor work performance' is adequate when coupled with specific examples.").  The burden of persuasion thus reverts to Burch to show that Holcim's stated nonretaliatory reason is pretextual.

---

[64] R. Doc. 19-1 at 22-23.
[65] *See* R. Docs. 19-9; 19-10; 19-11; 19-12; 19-15; 19-16; 19-17; 19-20.  Burch contends that the Court should not consider these exhibits because they are not authenticated or sworn based on personal knowledge.  R. Doc. 23 at 8-10.  But Federal Rule of Civil Procedure 56 does not require that summary-judgment evidence be produced in admissible form.  "It is enough that the evidence can be made admissible for trial."  *Poincon v. Offshore Marine Contractors, Inc.*, 9 F.4th 289, 299 n.4 (5th Cir. 2021) (citing *Celotex Corp.*, 477 U.S. at 324).

### 4.  Pretext

Burch has pointed to sufficient summary-judgment evidence to raise a disputed issue regarding Holcim's purported reason for terminating Burch.  Burch denies ever having been coached or disciplined for the performance issues cited by Holcim, and claims that he was unaware that his superiors were dissatisfied with his performance prior to his termination.[66]  "[W]hen an employer opts to have a disciplinary system that involves warnings, failure to follow that system may give rise to inferences of pretext."  *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015).  The emails between Ney and McManus indicate that Holcim had a policy requiring documentation of coaching or disciplinary actions prior to terminating an employee for poor performance.  On November 30, after Sessa sought approval from McManus to terminate Burch, and McManus in turn sought approval from Ney, Ney asked McManus whether "the performance issues [were] documented on either a note to file, coaching form or email."[67]  McManus told Ney that she "confirmed with [Sessa] … that [Baird] has all meetings documented as reference notes."[68]  However, when questioned about this documentation during his deposition, Sessa did not recall telling McManus that meetings between Baird and Burch had been documented and denied knowledge that any such documentation existed.[69]  Thus, despite Ney's reliance on McManus's assurance that there were records of Baird's disciplining or coaching Burch, no such records have surfaced.

Aside from forwarded email communications (none of which document coaching or disciplinary meetings between Baird and Burch), the only documentation provided to McManus consists of the emails sent by Sessa the evening of November 30, after the termination process had

---

[66] R. Doc. 23 at 1, 4, 8.
[67] R. Doc. 19-26 at 2.
[68] *Id.*
[69] R. Doc. 23-2 at 134-35.

begun, and one email sent on December 1, after Burch had been terminated, which discussed events of a meeting held that morning, after Burch's termination had already been approved.[70] Where, as here, there is "a lack of contemporaneous documentation coupled with evidence that such documentation should exist" and "such documentation was created after" the employee engaged in a protected activity and the decision to terminate the employee was made, the record contains "additional circumstantial evidence of pretext." *Burton*, 798 F.3d at 240.

"The combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *Id.* (alteration omitted) (quoting *Evans v. City of Hous.*, 246 F.3d 344, 356 (5th Cir. 2001)). Thus, the close temporal proximity between Burch's reporting the dumping and his termination, the lack of documentation of coaching or discipline, and the erroneous statement by McManus that such documentation existed – which Ney relied on in approving Burch's termination – are sufficient for Burch's claim to survive summary judgment.

### 5. After-acquired evidence

Holcim seeks to invoke the after-acquired evidence doctrine to "limit any backpay award from the date of [Burch]'s termination (December 1, 2023) until [Holcim] learned about [Burch]'s dishonest employment application at his deposition (November 12, 2024)."[71] Holcim learned through Burch's deposition that Burch was the owner of Marion Rayburn Construction and that he ceased operations of that company in the fall of 2022 because he could no longer compete with other contractors in the areas for bids.[72] Holcim contends that Burch made a misstatement on his application to work at Holcim when he answered "new opportunity" as his reason for leaving his prior employment at Marion Rayburn Construction because Burch "was not even aware of the

---

[70] R. Doc. 19-13 at 2.
[71] R. Doc. 19-1 at 25.
[72] R. Doc. 23-3 at 24-25.

opening for an Area Manager at Holcim at the time he closed his company."[73]  For the after-acquired evidence doctrine to apply, the defendant "must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."  *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362-63 (1995).  Holcim contends that it "would not have hired [Burch] had it known about the misstatement in his employment application."[74]  However, Holcim merely assumes that this was a misrepresentation.  There is no indication that the "new opportunity" referred to was the area manager position at Holcim specifically.  When Burch ceased operations of his company, of which he was the sole employee, because he could no longer compete for bids, he necessarily needed new employment.  And when a "new opportunity" to work as an area manager for Holcim presented itself, he took it.  Thus, the Court agrees with Burch that it can "still [be] true that [he] was looking for a new opportunity"[75] even though he left his prior position by closing his company.  There is a genuine issue of material fact as to whether Burch made a misrepresentation on his employment application, and Holcim therefore cannot establish that it would not have hired him had it known of this purported misrepresentation.

IV.    **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that defendant's motion for summary judgment (R. Doc. 19) is DENIED.

New Orleans, Louisiana, this 5th day of March, 2025.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[73] R. Doc. 19-1 at 24.
[74] *Id.* at 25.
[75] R. Doc. 23-3 at 47.